## HOMER NAIL v. STATE.

No. A-3391—Opinion Filed Oct. 8, 1920.

(192 Pac. 592.)

(Syllabus.)

1. TRIAL—Directing Acquittal—Refusal. Where there is sufficient evidence at the conclusion of the state's case to have authorized the conviction of defendant of the crime of murder as charged in the information, it is not error for the trial court to refuse to direct a verdict of not guilty.

2. APPEAL AND ERROR—Necessity for Prejudicial Error—Overruling Challenge for Cause. Where the record affirmatively shows that neither of two jurors who were challenged for cause by defendant sat upon the trial jury, and further it does not appear that defendant was required to and did exhaust all of his peremptory challenges, and by reason thereof was deprived

of a fair and impartial jury in the trial of the cause, there is no showing of prejudicial error on the part of the trial court in overruling defendant's challenges for cause to such jurors.

3. **EVIDENCE—Res Gestae—Conversations.** Where evidence, alleged to have been erroneously admitted over the objection and exception of defendant, is clearly a part of the res gestae, and it is also apparent from the record that the evidence complained of was a part of a conversation which took place in the presence and hearing of defendant, it was not error for the trial court to overrule the objection of defendant to the admission of such evidence.

4. **TRIAL—Instructions—Evidence to Justify.** It is the duty of the trial court to instruct on the law of every degree of crime of which there is any evidence reasonably tending to establish, but it is not error to refuse to instruct on any degree of crime of which there is no evidence offered.

5. **SAME—Refusal of Requests.** It is not reversible error for the trial court to refuse to instruct on some theory of defense of which there is no evidence.

6. **CONTINUANCE—Discretion of Trial Court.** Applications for a continuance are addressed to the sound discretion of the trial court. Motion and application for continuance in this case considered in connection with the entire record, and it is held no manifest abuse of discretion appears in denying a continuance.

*Appeal from District Court, McCurtain County;*

*C. E. Dudley, Judge.*

Homer Nail was convicted of murder, and he appeals. Affirmed.

Homer Nail was tried and convicted in the district court of McCurtain county, in the latter part of December, 1917, for the murder of one G. T. Cole, a deputy sheriff of said county, on the 21st day of November, 1917.

It appears from the evidence that at the time this alleged homicide was committed, defendant was a deserter

from the United States army and deceased had placed him under arrest for the desertion, and according to the state's evidence, defendant killed deceased while in the act of re-sisting such arrest and for the purpose of escaping from deceased. The killing occurred in a tent at a lumber camp near the town of Bismark in McCurtain county, between the hours of 11 and 12 o'clock at night on the 21st of November, 1917. The evidence on the part of the state makes out a clear case of murder against defendant.

The defendant attempted to justify the killing on the ground of self-defense, claiming that he did not know deceased was an officer and was attempting to place him under arrest at the time of the killing, and also that deceased did not inform him of the fact that he was an officer and was arresting him for any offense.

The testimony of defendant's wife and other witnesses who were present at the time of the tragedy tends to support the theory of the state that defendant knew that deceased had placed him under arrest at the time of the killing, and that the killing was the result of an effort on the part of defendant to resist such arrest for the crime of deserting the United States army, and to avoid being taken into custody by the said deceased officer.

We deem it unnecessary to give a synopsis of the testimony of each witness, as the questions involved in the appeal may be passed upon without making a full detail of the evidence.

*Claude P. Springs* and *L. E. Mifflin,* for plaintiff in error.

*S. P. Freeling,* Atty. Gen., and *W. C. Hall,* Asst. Atty. Gen., for the State.

MATSON, J. (after stating the facts as above.) It is first contended that the trial court erred in overruling the demurrer of defendant to the evidence at the conclusion of the state's case. While a demurrer to the evidence is not recognized in the criminal procedure of this state, this court has always treated such a motion as a request to direct a verdict of not guilty. Such request was properly overruled in this case, because there was ample evidence in the record at the conclusion of the state's case to have authorized the conviction of defendant of the crime of murder.

It is next contended that the trial court erred in overruling a challenge for cause to the competency of the jurors Strawn and Guest. The record affirmatively shows that neither of these jurors served upon the panel. It is not made to appear whether they were challenged peremptorily by the state or by defendant. If challenged by the state, it is apparent that defendant could not have been injured by any previous ruling of the court overruling a challenge for cause by defendant. If they were afterwards challenged peremptorily by defendant before any error reversible in its nature could be based upon the alleged erroneous action of the trial court in overruling a challenge for cause, it must appear that defendant was required to and did exhaust all of his peremptory challenges, and that by reason of such action, defendant was deprived of a fair and impartial jury in the trial of the cause. There is no showing in this record that any of the jurors who sat upon the trial of this cause were in any respect disqualified or in any manner prejudiced against defendant or his cause of defense. We find that this assignment is without substantial merit.

It is next contended that the trial court erred in permitting the state to introduce certain incompetent and irrelevant testimony, over objection and exception of defendant.

The record in respect to this assignment is as follows (testimony of G. H. Vivian):

"Q. Do you remember the occasion of Mr. Cole getting shot up there at the Front? A. Yes, sir.

"Q. Where were you at the time that happened? A. When the first shot fired, I was in the door, and the light went out, and I stepped about two steps to the southeast corner on the outside of the tent.

"Q. How come you to be there? A. To be with Cole up there? Q. Yes, sir. A. He got me to go with him up there. Q. He came to you and requested you to go? A. Yes, sir. Q. Where were you at the time Mr. Cole went in the tent? A. I was on the outside when he went in, on the west. Q. Were you close enough to hear what was said on the inside of the tent? A. Yes, sir. Q. Who went in there with Mr. Cole? A. Well, Mr. Thompson, I think, was with him. I don't know whether he went in the tent or not; I couldn't say. Q. What was said when Mr. Cole went in the tent? A. He says, 'Who is that, and what's your name, and what do you mean?' Q. How is that? A. He says, 'Who is that, and what's your name, and what do you mean?' Q. What did Mr. Cole say? A. He says 'This is Cole, looking for Homer Nail.' He says, 'He ain't here, and ain't been in here.' Q. Then what did he do? A. He went in the other tent, and I heard Thompson say, 'That's the man.'

"By Mr. Spriggs: We object to what Thompson said.

"By the Court: The objection will be overruled. (To which ruling of the court, defendant then and there duly excepted at the time).

"Q. Now, what was said at that time by Mr. Cole?

Did Mr. Cole say anything to Nail? A. Yes, but I don't know what he did say. I heard him say, he told him what he had him for. Q. All right, what did Cole say to Nail? A. He asked him what was this for; he said it was for deserting the army. (Defendant objects, and asks that the answer of the witness be stricken. Which said objection is, by the court overruled, to which said ruling of the court, defendant then and there duly excepted at the time.) Q. You mean to say that Neal asked Mr. Cole what this was for? A. Yes. Q. And Mr. Cole told him for deserting the army? A. Yes. Q. All right what was said then? A. Cole told him to get up; he said 'Get up', said that several times. He says, 'No; let's fool around here until morning.' Cole said, 'No; we are going to go'."

It is apparent from the foregoing examination of the witness Vivian that there was no error in the ruling of the trial court in permitting the witness to detail what was said and done at the time of the arrest of defendant. The evidence was properly a part of the res gestae, and from the examination it also appears that defendant must have heard the conversation, because he immediately asked deceased "What this was for?" and deceased thereupon replied, "It was for deserting the army."

Furthermore, the defendant was permitted as a witness to detail his version of this affair. Under the testimony of the state's witnesses the evidence was clearly competent for the reasons stated above; and, while defendant denied having heard such a conversation between Thompson and Cole in his presence, it was for the jury, as the exclusive triers of the facts, to determine which version was true and which untrue.

It is also contended that the trial court erred in giving instruction No. 3, over the objection and exception of defendant. In the instruction complained of, the court

told the jury that there was no evidence tending to show that the crime committed by defendant constituted either manslaughter in the first or second degree or excusable homicide, as defined by the statutes.

While this court has held that it is the duty of the trial court to instruct on the law of every degree of the crime if there is any evidence reasonably tending to support the same, it has also been held to be not error to refuse to instruct on any degree of crime on which there is no evidence offered. *Hopkins v State,* 4 Okla. Cr. 194, 108 Pac. 420.

The brief filed in behalf of defendant in no way tends to point out any evidence which would tend to show that the homicide was either manslaughter in the first or second degree, neither was there any defense interposed which would tend to excuse the killing. Under the evidence in the record before us, from the state's standpoint, the crime was murder and nothing less. The defendant attempted to justify the killing on the ground of self-defense, and this theory of defense was submitted to the jury. Under such circumstances, it is the opinion of this court that the instructions fairly covered the law of the case, and are as favorable to defendant as the evidence warranted.

It is also contended that the trial court erred in refusing to give certain requested instructions on the theory that defendant killed deceased while in the act of defending his domicile against a known felony about to be perpetrated by deceased. The refusal of the trial court to give such requested instruction was not erroneous, for the reason that there is no evidence in the record tending to support such a theory.

Further, it is contended that the trial court erred in overruling defendant's application and motion for a continuance of the cause. No argument is advanced, nor authorities cited, in the brief of counsel for defendant to sustain this contention. The court has examined the motion, and has considered the same in connection with the entire record, and it cannot be said that the trial court abused its discretion in denying a continuance in this case.

An examination of this record convinces this court that defendant is guilty of murder, perpetrated without any justification or excuse, and in an attempt to avoid and resist an officer who was arresting defendant as a deserter from the United States army. The evidence on the part of the state, and also some of the evidence adduced by defendant, clearly leads an impartial investigator to the conclusion that defendant knew that deceased was an officer; that deceased informed defendant of that fact, and that he had placed defendant under arrest as a deserter from the United States army; and that thereupon defendant, in order to avoid, resist, and escape such an arrest, used a deadly weapon, or weapons, upon deceased, inflicting a mortal gunshot wound in the abdomen of deceased, severing an artery and causing an internal hemorrhage, from which deceased died in a few moments.

While this appeal is prosecuted as that of a poor person, it is apparent that defendant was represented by able counsel in the trial court, and that every precaution was taken to preserve his rights throughout the trial. That he was convicted of murder, and sentenced to serve the rest of his natural life in the penitentiary, was through no fault or laches on the part of his counsel, but was due rather to the convincing evidence of his guilt.

Finding no reversible error in the record, the judgment of conviction is affirmed.

DOYLE, P. J. and ARMSTRONG, J., concur.